El Pueblo de Puerto Rico, demandante y apelado, *v.* Enrique Báez, acusado y apelante.

No. 4166.—*Sometido:* Mayo 15, 1933. *Resuelto:* Julio 22, 1933.

---

* Nota: Véase el prefacio.

*R. Rivera Zayas* y *E. Báez García,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Enrique Báez fué acusado por el Gran Jurado del Distrito Judicial de Mayagüez de un delito grave de abuso de confianza imputándole que siendo funcionario de El Pueblo de Puerto Rico como secretario de la Corte de Distrito del Distrito Judicial de Mayagüez y en ocasión de estar encargado de recibir, guardar, conservar y legalmente traspasar y desembolsar las cantidades de dinero que se depositaran en su poder en los pleitos civiles, recibió del márshal de esa corte en uno de los días del mes de octubre de 1926 en su carácter oficial ya dicho la cantidad de $3,500 procedente de una venta judicial hecha en el pleito No. 11966 promovido por Clotilde Toro de Díaz en su carácter de madre con patria

potestad de sus menores hijos, perteneciendo dicha suma a los expresados menores, y que dicho Enrique Báez ilegal, voluntaria, maliciosa y fraudulentamente se apropió para su uso particular y en forma contraria a la debida y legal ejecución de sus deberes oficiales de la expresada suma de $3,500 que le había sido confiada y fué a su poder en el ejercicio de su cargo en el pleito de referencia, privando a sus dueños de la expresada cantidad.

Esa causa fué trasladada a la Corte de Distrito de Aguadilla, donde un jurado lo declaró culpable de dicho delito y fué condenado por él.

■ En la apelación que ha interpuesto contra la sentencia condenatoria alega como error para su recurso que la Corte de Distrito de Aguadilla actuó sin jurisdicción al conocer de la causa y dictar sentencia contra el apelante. Éste interpuso apelación contra la resolución de la Corte de Distrito de Mayagüez que dispuso el traslado de esta causa a la Corte de Distrito de Aguadilla y la resolvimos en estos autos confirmando la orden de traslado (44 D.P.R. 54), por lo que no es sostenible ese alegado error.

■ * El segundo es por haber sido admitido como prueba cierto certificado con materia perjudicial para el acusado. Para probar el fiscal que el acusado era secretario de la Corte de Distrito de Mayagüez en la expresada época presentó una certificación del Secretario Ejecutivo de Puerto Rico en la que relata los nombramientos hechos a favor del acusado para dicho cargo y a continuación de ella se dice que desempeñó dicho cargo hasta que fué suspendido por el Gobernador en 4 de diciembre de 1926 y decretada su destitución el día 24 del mismo mes y año. El fiscal manifestó en el juicio que presentaba esa certificación en cuanto se refería a los nombramientos del acusado como secretario. El acusado se opuso a ella solamente por el último extremo que contiene, por no tener otro efecto en el jurado que causarle un perjuicio con respecto a su conducta y reputación. La corte admitió la

* Véase la discusión bajo el No. 10 de este caso.

certificación anunciando que en su oportunidad instruiría al jurado de manera de salvar lo que la defensa establece como temor; y en sus instrucciones al jurado le dijo con respecto a ese particular de dicha certificación que esa parte de ella es completamente extraña a la prueba permitida y a la que legalmente debía haberse recibido por la corte y que si esa prueba va a ella con ese aditamento es porque el documento está rendido en una sola hoja de papel y no se hubiera podido proscribir tal aditamento sin mutilarlo y sin menoscabar su autenticidad perdiendo la firma y el sello pero que repite al jurado que no debe tener para nada en cuenta ese extremo de la certificación; que no puede levantar ninguna inferencia respecto de esta circunstancia que pueda perjudicar en lo más mínimo al acusado; que tal aditamento es innecesario en absoluto y que deben tenerlo por no escrito en el documento; que tal aditamento no puede operar en la conciencia del jurado en ningún sentido; que no puede determinar reacción alguna en su ánimo al juzgar toda la prueba admisible en derecho.

Ciertamente que el extremo mencionado de tal certificación no era admisible en el juicio como lo reconoció el fiscal al presentarla solamente en cuanto a los nombramientos y al admitirla la corte sujeta a la instrucción que daría al jurado, como la dió, tan clara y precisa, según puede verse en ella, que si el jurado ha cumplido, como suponemos que ha cumplido, con el deber que tiene de no tener en cuenta el extremo controvertido, tendremos que llegar a la conclusión de que no ha causado prejuicio alguno en el jurado contra el acusado. El caso de *El Pueblo* v. *Rodríguez,* 33 D.P.R. 478, que el apelante cita en apoyo del error alegado no es aplicable al presente caso porque en él la certificación que se presentó se refería únicamente a hacer constar que el Concejo de Administración de Yauco había suspendido al acusado de su puesto por irregularidades que había cometido, por lo que su objeto en el juicio no podía ser otro que probar ese hecho con perjuicio para el acusado, mientras que en el presente el extremo

a que nos referimos de la certificación no fué presentado como prueba por el fiscal y aunque formaba parte del documento no impugnado en cuanto a los nombramientos, la corte dijo al jurado que no tomase en cuenta dicho particular. El apelante no se opuso a esa certificación porque fuese en relación con sus nombramientos y no una certificación literal de ellos, por lo que no tenemos que resolver esta cuestión suscitada por primera vez en esta apelación. *El Pueblo* v. *Bird,* 5 D. P.R. 189; *El Pueblo* v. *Borrás,* 9 D.P.R. 411; *El Pueblo* v. *Asencio,* 16 D.P.R. 355; *El Pueblo* v. *Alsina,* 22 D.P.R. 459, y *El Pueblo* v. *Carrión,* 35 D.P.R. 901.

Para probar el fiscal que el acusado tomó posesión del cargo de secretario de la Corte de Distrito de Mayagüez presentó los juramentos que con tal motivo él prestó ante funcionarios judiciales y alega el apelante en el tercer motivo de error que tales documentos no debieron ser admitidos por la corte porque no se había probado en forma legal que era secretario de la expresada corte; pero ya hemos dicho que el documento en que consta el nombramiento del apelante para tal cargo era admisible con la salvedad que hizo la corte en cuanto a una adición que tenía, y, por consiguiente, estando probado que fué nombrado para ese cargo no hubo error en admitir que tomó posesión del mismo.

En el cuarto motivo del recurso dice el apelante que fué error admitir un expediente judicial sobre autorización judicial sin que hubiera sido identificado debidamente por el secretario de la corte. El secretario de esa corte declaró que el expresado expediente es de la mencionada corte y esto es suficiente identificación del mismo, a pesar de que declaró que el expediente lo tenía el fiscal para esta causa criminal.

El quinto motivo dice: "La Corte de Distrito de Aguadilla cometió error al admitir como prueba una copia o nota simple de un recibo, que se dijo hecho por el testigo Lorenzo Suárez y la cual no es admisible en absoluto."

Para probar el fiscal que los $3,500 a que se refiere la acusación fueron entregados por el márshal de la Corte de

Distrito de Mayagüez al apelante, secretario entonces de dicha corte, presentó testigos de haber visto el recibo del apelante por dicha cantidad y prueba de que ese recibo fué presentado como prueba por el fiscal en otra causa criminal seguida en la Corte Municipal de Mayagüez contra el apelante y remitido en apelación de esa causa a la Corte de Distrito de Mayagüez donde fué recibido, perdiéndose allí, sin que haya sido posible encontrarlo a pesar de haber sido buscado. Después de esa evidencia presentó el fiscal en esta causa una copia de ese recibo que el submárshal Lorenzo Suárez hizo de su puño y letra cuando entregó el recibo original al fiscal. Esa copia dice así: "No. 583.—Department of Justice, Corte de Distrito de Mayagüez.—No. 8451.— Octubre 14, 1926.—Recibí del Márshal de esta corte la suma de tres mil quinientos dollars en liquidación de los pleitos Nos. Causa No. 11,966—$3,500.00.—Nota: Original del Secretario entregado al Fiscal del Distrito." La corte admitió esa prueba para corroborar la declaración del testigo Lorenzo Suárez, y dice el apelante que no debió ser admitida porque la declaración de ese testigo fué mandada a eliminar casi en su totalidad. Sin embargo, no fué eliminada en cuanto a que entregó dicho recibo al fiscal y en cuanto a que hizo una copia del recibo por lo que esa copia corrobora este extremo de su declaración. De todos modos, esa prueba no era perjudicial para el apelante porque sin ella hubo prueba suficiente de la existencia del recibo de dicha cantidad con la firma del apelante.

El fiscal también presentó como prueba la libreta de ingresos de dinero en un banco, en la que aparece el ingreso del cheque que por $3,398.88 envió el Tesorero de Puerto Rico a la secretaría de la Corte de Distrito de Mayagüez para pagar ciertas cantidades que habían desaparecido de ella; y el talonario de un cheque librado por $600 a favor de la señora mencionada en la acusación. Con respecto a esos documentos alega el apelante en el sexto motivo de su recurso que no debieron ser admitidos porque no fueron

identificados por el funcionario que los tiene bajo su custodia, por el secretario de la Corte de Distrito de Mayagüez, y porque era impertinente e inmaterial porque no relacionan al acusado con la comisión del delito por ser las operaciones a que se refieren posteriores a la comisión del delito imputado. Entendemos que aunque el secretario de la Corte de Distrito de Mayagüez no hizo la identificación de esos documentos, la hecha por el subsecretario fué suficiente porque él fué quien actuando como secretario interino de la corte hizo el ingreso y el egreso a que se refiere. En cuanto al otro extremo de impugnación convenimos con el apelante en que no era necesaria la prueba a que estamos refiriéndonos pero su admisión no pudo causarle perjuicio alguno porque el que se hubiera ingresado un dinero en el banco y luego se hubiera expedido un cheque contra dinero depositado en él nada inculpaba al apelante. De todos modos, la declaración del testigo Durán sobre los extremos expuestos y la presentación del talonario de cheques y la libreta de ingresos resultaba evidencia acumulativa y ya hemos dicho en el caso de *El Pueblo* v. *Rodríguez*, 35 D.P.R. 857, lo siguiente, que copiamos del sumario: "La admisión como prueba de una lista de sorteo de lotería esté o no debidamente certificada o identificada, siendo evidencia acumulativa y sin importancia, no constituye error perjudicial."·

El séptimo motivo de apelación lee así: "La Corte de Distrito de Aguadilla cometió error al admitir como prueba un volante de fecha septiembre 26 de 1929, que se dijo dirigido al Secretario de la Corte de Distrito de Mayagüez, relacionado con un *check* que el señor José Durán manifestó haber recibido del Tesorero de Puerto Rico, sin que dicho volante estuviese firmado por nadie, apareciendo completamente anónimo, siendo una relación de hechos sin garantía de ninguna especie y no obstante referirse a otros hechos y haberse presentado por el fiscal con el solo objeto de impresionar, como impresionó, al jurado en contra del acusado." Este es el motivo que dice el apelante ser de más importancia.

El testigo José Durán Cruz declaró que siendo secretario interino de la Corte de Distrito de Mayagüez recibió el 26 de septiembre de 1928 un cheque que le envió el Tesorero de Puerto Rico con un volante unido a él en el que se explicaba que era para hacer pago de ciertos fondos que se habían desaparecido de la Corte de Distrito de Mayagüez. Ese volante dice así: "Secretario, Corte de Distrito de Mayagüez, Mayagüez, P. R.—1928.—Sept. 26.—Cantidad para atender a los pagos de los fondos depositados por litigantes en casos civiles con el ex Secretario de la Corte de Distrito de Mayagüez, Enrique Báez, cuya cantidad, según aparece de la investigación practicada por el Auditor de Puerto Rico, fué desfalcada por dicho Enrique Báez; de acuerdo con la Resolución Conjunta No. 48, aprobada en mayo 2, 1928. . . . $3,398.88." El fiscal presentó como evidencia ese volante no para ser prueba de por sí sino en corroboración de la declaración del testigo: se opuso el apelante a que fuese admitido por no estar certificado por el Tesorero pero la corte lo admitió como corroboración de aquella parte de la declaración donde el testigo dijo el objeto con que le fué mandado dicho cheque por el Tesorero. Entonces el apelante tomó excepción de esa resolución porque ese volante no está firmado por persona alguna por lo que resulta anónimo y porque es perjudicial a sus intereses. En su alegato escrito dice que esa prueba no era pertinente porque no tendía a probar la acusación; porque la declaración del testigo no necesitaba corroboración por ser completamente clara y que le es perjudicial porque parte de la base de que el apelante es culpable porque así lo demuestra la investigación hecha por Auditoría. Cuando la corte dió sus instrucciones al jurado le dijo con respecto a ese volante que lo aceptó como corroboración de la declaración del testigo Durán en aquella parte en que dijo el objeto con que se le mandó el cheque por el Tesorero y que el jurado no debía tomar ese documento en cuenta para nada que no fuese con el fin para el cual fué admitido. El motivo de admisión de esa evidencia y lo que dijo la corte

al jurado en la instrucción que le dió sobre ese particular fué suficientemente claro en el sentido de que ese volante fué admitido solamente para probar por qué el Tesorero mandó ese cheque y para nada más, por lo que los jurados no han podido tenerla en cuenta como prueba de culpabilidad del apelante, ya que debe presumirse que los señores del jurado cumplieron con el juramento que prestaron y que observaron las instrucciones que les dió la corte. *People* v. *Williams,* 24 Cal. 31; *People* v. *Kramer,* 117 Cal. 647. Por otra parte, existió prueba independiente y también por repreguntas hechas por el apelante durante el juicio de que los $3,500 a que se refiere esta causa fueron entregados al apelante como secretario de la Corte de Distrito de Mayagüez, de que no los ingresó en el banco donde tenía su cuenta y de que tal cantidad no ha sido encontrada en dicha secretaría, por lo que en vista de esa prueba no podemos sostener que el volante a que venimos refiriéndonos causó perjuicio al apelante, tanto más teniendo en cuenta la instrucción que la corte dió al jurado. Además, lo que dice ese documento es una repetición de la fraseología de una ley de la Asamblea Legislativa de Puerto Rico consignada en la resolución conjunta a que hace referencia, que por ser tal tiene la presunción legal de ser conocida por todos los habitantes de esta isla. En vista de la prueba independiente de ese documento, de la resolución conjunta citada y de la instrucción que la corte dió al jurado, no creemos que dicho documento fuese lo que causó la condena del apelante. En el caso de *El Pueblo* v. *Texidor,* 21 D.P.R. 14, hemos dicho lo que sigue:

"En este caso hubo evidencia suficiente de la comisión del delito, con independencia de la que erróneamente admitió el juez y eliminó después, por lo que no encontramos fundamento para poder afirmar que la evidencia que se ordenó al jurado que borrara de sus mentes fuera la que produjo la convicción del apelante. Es cierto que mejor es, que la prueba impertinente no sea oída por los jurados, pero cuando esto ocurre, debemos suponer que los jurados cumplieron con su deber de prescindir de esa evidencia, para llegar a

la declaración de culpabilidad, a menos que sea muy importante y presentada para influenciar al jurado. No creemos que tal evidencia sea tan importante que constituya un defecto sustancial para que revoquemos la sentencia por ese motivo. En otros casos en que la evidencia era más grave que en el presente, los tribunales han negado la revocación y la concesión de nuevo juicio. People v. Turner, 118 Cal. 324; State v. Barker, 43 Kan. 262, 23 Pac. 575, y State v. Turbeck, 29 Kan. 535.''

El caso de *El Pueblo* v. *Rodríguez,* 33 D.P.R. 478, que cita el apelante no es aplicable porque en aquél se presentó el documento sin explicar el objeto o propósito de ofrecerlo en evidencia mientras que en el presente se explicó para qué se presentaba, se declaró para qué era admitido y, además, la corte dijo al jurado para lo único que podían tenerlo en cuenta, que no era como prueba del delito. En consecuencia no podemos declarar que el mencionado documento causó perjuicio al apelante.

El octavo error que se alega es porque la corte inferior declaró constituído el jurado sin haberle tomado el juramento requerido por el artículo 233 del Código de Enjuiciamiento Criminal y por permitir que se retirara de la sala de sesiones por orden de la corte sin advertirles que no debían hablar entre sí ni con otras personas acerca del proceso ni formar juicio respecto a él hasta que fuese sometido a su deliberación.

Es cierto que la ley requiere que se debe tomar juramento al jurado para desempeñar bien y fielmente su cargo antes de que empiece a ejercer sus funciones, pero el hecho de que no aparezca de estos autos que tal juramento fué prestado no es prueba conclusiva de que no lo fuera. Pudo haber sido prestado ese juramento y sin embargo no decirse así en los autos. La presunción es que la ley fué cumplida tomándose ese juramento. Nada hay en los autos que contradiga esa presunción. Se dice en ellos que después de seleccionado el jurado éste quedó constituído por los señores que enumera; y como el juramento es un requisito legal, si quedó consti-

tuído es porque existió ese juramento. Además, el apelante estuvo representado en el juicio por dos abogados y no aparece protesta u objeción alguna en el juicio por la falta de ese juramento; ni siquiera ellos o alguno de los dos jura que no fué prestado. No aparece tampoco que en la moción de nuevo juicio se alegase la falta de ese juramento. Por otra parte, el Tribunal Supremo de los Estados Unidos en un caso de asesinato, *Baldwin* v. *The State of Kansas,* 129 U. S. 52, en el que se alegó que a los jurados no se les tomó juramento de acuerdo con la forma prescrita por el estatuto de Kansas por lo que el jurado no era un tribunal legalmente constituído, y que la sentencia privaría al acusado de su vida sin el debido proceso de ley, la Corte Suprema hizo suyas las palabras de la Corte Suprema de Kansas en las que se expresó así:

"Una razón aun más contundente para contestar la alegación levantada es que ninguna objeción se hizo por el acusado apelante a la forma del juramento cuando se tomó o en ningún otro tiempo antes de haberse presentado el caso ante esta corte. Si existió alguna irregularidad a ese respecto debió haber sido levantada al momento en que ocurrió. Quizá ha podido ocurrir que hubo alguna irregularidad en la forma del juramento y cuya forma es universalmente conocida por el uso en todas las cortes del estado; pero si la forma del juramento fué defectuosa ha debido llamarse la atención de la corte hacia el hecho al momento en que el juramento se tomó, de manera que hubiera podido corregir la falta. Un acusado no puede permanecer callado y silencioso a la expectativa y correr las eventualidades de una absolución y subsiguientemente cuando se le declara culpable hacer objeciones a una irregularidad en la forma del juramento. No solamente debe levantarse la cuestión cuando la irregularidad se comete, sino que la forma en que el juramento se tomó, así como la objeción, debieron ser incorporados en un pliego de excepción, a fin de que esta corte pueda ver si es o no suficiente. Nada de esto se hizo . . .

" *    *    *    *    *    *    *    *

"En el presente caso los autos no demuestran que en el juicio ante el jurado, ningún derecho, privilegio o inmunidad bajo la Constitución de los Estados Unidos se levantó o fué reclamado por el acusado. No se hizo objeción a la forma en que se tomó el jura-

mento durante el juicio ni al radicar el acusado su moción de nuevo juicio ante la corte sentenciadora ni al hacer tampoco su moción para suspender la sentencia ante aquella misma corte. La cuestión fué que se levantó por primera vez ante la Corte Suprema del estado. Esta corte, como hemos visto, rehusó considerar la objeción por el fundamento de que no se había levantado la cuestión durante el juicio. Por esa razón nosotros también rehusamos considerarla.''

Si el juramento en este caso no fué prestado por el jurado debió llamarse la atención de la corte para que ese defecto pudiera ser corregido. Ahora la cuestión se presenta demasiado tarde. En un caso civil se ha resuelto que no se anulará un veredicto porque uno de los jurados no haya prestado juramento cuando no se demuestra que tanto la parte que solicita la nulidad como su abogado ignoraban ese hecho; y en otro caso de igual naturaleza en el que se imputaba como error que los autos no demostraban que el jurado fué juramentado para decidir las cuestiones en controversia, se dijo después de varios razonamientos, que si hubo algún defecto en la forma del juramento fué abandonado por dejar de hacer objeción contra él. *Scott* v. *Moore*, 98 Am. Dec. 581; *First National Bank* v. *Lowther-Kaufman Oil & Coal Co.*, 66 S. E. 713.

▆▆ Cuando declaraba el testigo Lorenzo Suárez, presentado por el fiscal, dijo la corte al fiscal: ''Puede hacerle la pregunta porque la corte ve que el testigo es enteramente hostil a la parte; la corte permite al fiscal que sea lo más sugestivo que quiera, ya que ha notado que el testigo le es completamente hostil.'' Esas palabras son motivo para que diga el apelante que la corte incurrió en pasión, prejuicio y parcialidad. Basta leer la declaración de ese testigo para quedar convencido de que era muy hostil a la parte que lo presentó, y las palabras de la corte son la razón para permitir preguntas sugestivas y no demuestran pasión o prejuicio contra el acusado.

▆▆ En el décimo motivo se alega que la corte cometió error al permitir que cuando el jurado se retiró a deliberar

llevase consigo el libro de caja del secretario de la Corte de Distrito de Mayagüez sin que fuera ofrecido ni admitido como evidencia. Nos bastará contestar diciendo que el apelante no nos demuestra con los autos que ese libro fué llevado por el jurado para sus deliberaciones.

Otro motivo del recurso es que la corte inferior actuó con pasión, prejuicio y parcialidad al dar sus instrucciones al jurado. Para apoyarlo señala ocho particulares de las instrucciones.

Hemos dicho antes que el fiscal presentó como prueba una certificación del Secretario Ejecutivo de Puerto Rico de los nombramientos hechos a favor del apelante para el cargo de secretario de la Corte de Distrito de Mayagüez, en cuya certificación se dice también que fué suspendido y después destituído de ese cargo. Ya hemos visto que el jurado fué instruído de que el documento fué admitido solamente en cuanto a los nombramientos y no en cuanto a su suspensión y destitución y el porqué fué admitido a pesar de tener ese aditamento y que la corte instruyó al jurado que no debía tener en cuenta ese particular para ningún fin. Esa instrucción no demuestra en manera alguna la imputación que se le atribuye a la corte y por el contrario es una clara demostración del cuidado que tuvo en que ese aditamento no causara perjuicio al acusado.

Se funda también ese error en que la corte dijo al jurado en sus instrucciones que se había presentado como prueba nota de un recibo por $3,500 expedido por el acusado a favor del márshal de la Corte de Distrito de Mayagüez sin que en ningún sitio del recibo aparezca el nombre del apelante y menos que fuera expedido por él. Sin embargo, la prueba testifical demostró que el recibo cuya copia se presentó fué expedido y firmado por el apelante, por lo que no existe el prejuicio que se le atribuye a la corte.

No existe tampoco el error alegado porque la corte no dijo en sus instrucciones al jurado que no tomase en consideración la manifestación que contenía el volante que fué

presentado respecto a que el acusado había desfalcado cierta cantidad de dinero, que al ser admitido por la corte ese documento manifestó al jurado que lo admitía como corroboración de la declaración de un testigo en cuanto al motivo por el cual el Tesorero le envió un cheque, quedando así excluído del documento lo referente al desfalco artribuído al acusado.

También se queja el apelante en el motivo de error que estamos resolviendo de que hablando la corte al jurado de los documentos que fueron presentados menciona el libro de caja de la secretaría de la Corte de Distrito de Mayagüez sin que tal libro hubiese sido ofrecido y admitido como prueba. No consta de los autos si ese libro fué ofrecido y admitido como prueba pero sí que ambas partes hicieron preguntas sobre su contenido al testigo Emiliano Poll, por lo que no podemos sostener que al referirse a él la corte lo hiciera por prejuicio que tuviera contra el acusado.

Se queja el apelante de que al hacer la corte la síntesis de la prueba mencionaba el título oficial de los testigos para impresionar al jurado y hacerle ver que eran empleados públicos. Como estos testigos habían declarado ante el jurado y habían manifestado los cargos públicos que desempeñaban, no vemos cómo pudo ser perjudicado el acusado con que al referirse a ellos expusiera la corte los cargos que desempeñaban. Era sencillamente una descripción de la persona.

La corte dijo al jurado en las instrucciones que le dió que la prueba del fiscal había tendido a demostrar (entre otras cosas) que el acusado recibió del márshal de la Corte de Distrito de Mayagüez la cantidad de $3,500 y que había presentado prueba documental y testifical para demostrar la preexistencia y la pérdida o desaparición del recibo que por $3,500 expidió el acusado al márshal de la Corte de Distrito de Mayagüez. Esto no es decir que la corte inferior dió por probado el hecho de que el recibo existió y que estaba firmado por el acusado, como dice el apelante al imputar a la corte prejuicio contra él.

Otra queja de prejuicio atribuída a la corte es porque le dijo al jurado que se había presentado cierto documento para corroborar la declaración del testigo Suárez, a pesar de que durante el juicio le manifestó que las contestaciones de ese testigo no podían tomarse en consideración como prueba contra el acusado sino para tenerlas en cuenta como impugnación a la veracidad de ese testigo. Esas palabras de la corte no fueron dichas en relación con el documento presentado como corroboración de un extremo que él declaró sino respecto de otro particular.

El hecho de que la corte dijera al jurado en sus instrucciones con referencia al recibo de los $3,500 que al fiscal no le había sido posible ni físicamente dable presentarlo como prueba no es demostración de prejuicio de la corte contra el apelante sino la exposición de un hecho resultante de la prueba.

Se alega en el décimosegundo error que la corte actuó con prejuicio y parcialidad al admitir el veredicto del jurado siendo contrario a la prueba; y al dictar sentencia condenatoria.

Al argumentar el apelante dicho motivo de error vuelve a tratar cuestiones propuestas en otro de los motivos de su apelación, tales como que no se probó en la forma que determina la ley que el apelante fuera secretario de la Corte de Distrito de Mayagüez y que no debió ser admitido el caso civil No. 11966 porque no fué autenticado debidamente, pero esas cuestiones han sido tratadas y resueltas en otros de los motivos de esta apelación.

Dice el apelante que no hay certeza por la prueba de que él recibiera los $3,500, pero la hay suficiente de que él firmó y entregó al márshal un recibo por dicha cantidad.

Hace el apelante varias interrogaciones respecto a por qué el fiscal no presentó las libretas del banco y el libro de contabilidad de la secretaría de la Corte de Distrito de Mayagüez. Si esas libretas contenían algo favorable al apelante él debió presentarlas y no lo hizo; y en cuanto a di-

cho libro de caja fué identificado y objeto de preguntas en el juicio por las partes sin que el apelante hiciera referencia a particular alguno de él para demostrar su inocencia en esta causa.

Hace referencia el apelante a nuestra opinión en otra causa criminal seguida contra él (*El Pueblo* v. *Báez*, 40 D. P. R. 24) por no haber depositado inmediatamente en el banco los $3,500 a que venimos refiriéndonos sino un mes después, para sostener que la declaración de Emiliano Poll no merece crédito. Este testigo era investigador de cuentas de la oficina del Auditor de Puerto Rico en la fecha a que se refiere esta causa y fué encargado de investigar las del apelante y dijo que los $3,500 no fueron ingresados por el acusado en el libro de caja de la secretaría de la corte de distrito que él llevaba ni· en el banco, pues no constaba tal ingreso en las libretas que examinó, y que no recuerda haber declarado en otra acción que fueron depositados después de haberse ido el declarante para San Juan y que lo cierto es que nunca fueron depositados en el banco. El acusado no presentó en esta causa ante el jurado prueba alguna de que depositara en el banco el dinero de los menores a que se refiere este proceso y por tanto el jurado pudo dar crédito a dicho testigo.

Tales son las impugnaciones que el apelante hace al veredicto del jurado y como no son sostenibles no podemos declarar que sea contrario a la prueba, tanto más cuanto que el examen que hemos hecho de la prueba demuestra a nuestro juicio que hubo suficiente para la condena, por lo que ésta estuvo justificada.

El último error aducido es por haberse negado la corte inferior a conceder al acusado prórroga para radicar la moción de nuevo juicio y porque declaró sin lugar la solicitud hecha en tal sentido. Rendido el veredicto del jurado el 6 de diciembre de 1928 solicitó el acusado cuatro días después que se suspendiera el pronunciamiento de la sentencia por un término razonable porque iba a presentar

una moción de nuevo juicio y necesitaba las notas taquigráficas. La corte suspendió dicho pronunciamiento de sentencia hasta el 30 de ese mes; término que luego le fué prorrogado hasta el 19 de enero de 1929. Dos días antes de vencer ese término solicitó el acusado una nueva suspensión fundado en que el taquígrafo no había podido terminar la transcripción de sus notas. Esa petición fué negada por la corte. El 19 de enero solicitó el acusado reconsideración de dicha resolución y le fué negada.

Nos parece que las prórrogas que suman un mes y nueve días concedidas al acusado para presentar su moción anunciada de nuevo juicio eran suficientes para ese fin; y aunque alegaba que necesitaba la transcripción de las notas del taquígrafo no presentó declaración jurada del mismo con respecto a si estaba trabajando en ellas y a cuánto tardaría en terminarlas. No justificó una verdadera causa para mayor demora en el pronunciamiento de la sentencia y la corte no cometió el error que se le imputa.

No queremos terminar sin llamar la atención de los fiscales y de los jueces a que no deben presentar y a que no deben admitir en los juicios para corroborar la declaración de un testigo, evidencia de documento que por sí nada prueba y que no es necesaria para dar credibilidad al testigo, porque dan ocasión a que se alegue que tal prueba fué presentada y admitida para causar prejuicio contra el acusado, a que haya necesidad de decidir en apelación si perjudicó o no al acusado y a que en algún caso tengamos que ordenar la celebración de un nuevo juicio, con las consecuencias que el tiempo pueda causar, con tardanza en la administración de la justicia y con nuevos gastos para las partes.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Señores Wolf y Hutchison disintieron.*

---

* NOTA: Véase el prefacio.