## THE STATE OF KANSAS v. C. D. BARKER.

1. CONTINUANCE — *Insufficient Showing.* A sufficient showing of diligence to compel the continuance of a cause in order to obtain additional testimony is not made out where the defendant applying for the continuance has failed to subpena the absent witness for the alleged reason that he was informed the witness would be present at the trial.

2. TESTIMONY, *Not in Record.* Error cannot be predicated upon a ruling excluding testimony, where the testimony desired is not shown in the record, nor any statement made as to what the proposed testimony would be.

3. CONTINUANCE, *Denied — Judgment, not Reversed.* Before closing his evidence, the defendant asked for a postponement of the trial to the following day in order to obtain the testimony of a person for whose attendance a subpena had only been issued a few hours before, and was not yet served. No adequate reason was given for the delay in causing the subpena to issue, nor any satisfactory showing made that it would be served, or the presence of the witness obtained. *Held,* That the denial of the application is not a ground for reversal.

4. NEW TRIAL — *No Ground for Granting.* While the jury were in the jury-room deliberating on their verdict they desired the testimony of a witness that was given orally in court, and the sheriff, who was on the outside of the room, the door being locked, responded: "Gentlemen, you cannot have any testimony admitted after you have gone into your jury-room." *Held,* That the defendant suffered no prejudice by reason of this communication, and that it afforded no ground for a new trial.

5. EVIDENCE, *Sustains Verdict.* The evidence examined, and held sufficient to sustain the verdict finding the defendant guilty of larceny.

### *Appeal from Ness District Court.*

CONVICTION for stealing a cow. The opinion states the facts.

*Stidger & Reed,* for appellant.

*L. B. Kellogg,* attorney general, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: In this case Doc. Barker was convicted of stealing a cow, and the punishment imposed was imprison-

ment at hard labor for a period of two years. He complains here that the court erred in refusing a continuance of the trial to the next term of the court on account of the absence of a witness. It appears that no subpena had been issued for the witness, nor was there any effort made to obtain his testimony until the day preceding the trial, when it was learned that he had gone to Michigan. The only excuse offered for this want of diligence was that the defendant had been incarcerated in the county jail for ten or twelve days prior to the trial. There was no showing as to when the witness left the county, nor any reason given for failing to have him subpenaed in sufficient time. The defendant was arrested on July 6, 1889. The preliminary examination was on July 11, and on August 9 the information was filed against him in the district court, and the case was not called for trial until September 25. There was ample time for the issue of subpenas and the preparation for trial. In his application for continuance he states that he was informed that the witness would be present to testify. He should not have rested upon this information, as the law affords a defendant compulsory process to insure the attendance of his witnesses, and ordinary diligence requires that he should avail himself of it. "Process runs to all parts of the state. If either the state or the defendant waits until the last moment before preparing for trial, the omission is not the fault of the law or the court, and any ill result is fairly chargeable to the party guilty of the omission." (*The State v. Rhea*, 25 Kas. 578.)

The matter of continuance was largely within the discretion of the trial court, and sufficient diligence was not shown by the defendant in an effort to obtain the testimony as would compel a continuance or justify a holding that there had been an abuse of discretion in its refusal.

1. Continuance—insufficient showing.

The next error assigned is, that the defendant was not permitted to tell the jury what Stephens, the party from whom he claimed to have obtained the cow, said to him at the time that he took possession of her. In testifying in his

own behalf, he said that while he was driving three heifers along the road from Ness county to Dighton, in Lane county, he met Stephens on the road, with a cow, which he turned over to him, and Stephens said he wanted the defendant to take the cow to Dighton and sell her, as he owed some parties there and did not want to take her himself. He was proceeding to give further statements of Stephens, when an objection to the testimony proposed to be given was sustained by the court. What the further statements of Stephens, pro-

2. Testimony, not in record. posed to be given in evidence were, the record fails to state, and hence we cannot say that the court erred in excluding the same. The presumptions are in favor of the correctness of the rulings of the court, and it is probable that the testimony excluded was hearsay and not admissible. He was allowed to testify that he obtained the cow from Stephens, and to give Stephens's explanation of why he put her in defendant's possession, and to deny all guilty knowledge that the cow had been stolen. It may be remarked that Stephens was afterward called as a witness and denied that he delivered the cow to defendant, or that he even saw the defendant on the day or night in question. We cannot say that there was any error committed in excluding the testimony.

Another objection is, that the defendant was compelled to close his evidence without the testimony of Samuel Briggs, which, it is claimed, was material. A subpena was not issued for his attendance until about 10 o'clock of the day of trial, and it appears that he resided fifteen miles from Ness City, the place of trial. The subpena was served about 6 o'clock in the evening of that day, and it appears that Briggs arrived at Ness City at 9 o'clock on the next day. In the afternoon of the day of the trial, and before his evidence was concluded, the defendant asked for a postponement till the next day, to await the coming of Briggs, and this was refused. No adequate excuse was offered for the delay in causing the subpena to issue. The court did not in fact know when the applica-

tion was made whether the subpena would or could be served, as the affidavit only stated in that respect the bare conclusion that the witness would be present on the morrow, without giving any facts to justify such a conclusion. If due diligence had been exercised and shown in subpenaing the witness, and a satisfactory showing had been made that his attendance could have been obtained by the next morning, the court might, if it deemed the testimony material, have properly exercised its discretion in granting an adjournment. But these things are lacking, and, besides, the testimony is not very important. It is evident that the animal was taken from the pasture of its owner on the evening or night of the 30th of June, 1889, and was taken to Dighton and sold by the defendant, about 10 o'clock on the next day. It was proposed to show by Briggs that he delivered to Barker, on the evening of the 30th of June, about sundown, the three heifers, and that defendant started in the direction of Dighton with them, which was about twenty-two miles distant from Briggs's place, and that the pasture from which the stolen cow was taken was thirteen miles away, in another direction; and Briggs stated in an affidavit that he did not think the defendant had time to go from his place that evening to the pasture in which the cow was kept, which was about two miles west of Ness City, and drive her to Dighton by 10 o'clock the next day. It was not clear, however, that there was not sufficient time to accomplish this task. But even if the testimony is to be regarded as important in the case, there was not sufficient diligence shown by the defendant in securing the attendance of Briggs at the trial. We think there was no reversible error in denying the application for a postponement.

3. Continuance, denied—judgment, not reversed.

It is next contended that the evidence is insufficient to support the conviction, for the reason that it was not clearly shown that the cow was in fact stolen in Ness county. Defendant testified that he obtained possession of the cow in Lane county, and he insists that as there is no direct testimony

as to the taking of the cow in Ness county, the verdict cannot be sustained. We think the evidence is sufficient to support the conviction. The jury evidently did not believe the testimony of the defendant, that he got the cow from Stephens in Lane county, or that he met or saw the defendant at that time. It appears that the cow was seen by its owner in the pasture about noon on June 30, and on the following day he discovered that she was missing. On July 1 the cow was found in the possession of the defendant, near Dighton. He admits that he was in Ness county on the 30th of June, although some distance away from the pasture from which the cow was taken; that he drove the other three animals from Ness county to Dighton in the night-time; and that instead of driving them into the town he left them about a mile distant when he went into town and negotiated the sale. He also admits that when the cow in question was sold, he signed a fictitious name, "J. W. Good," to the bill of sale. There is no satisfactory explanation given why he assumed and signed the name of "J. W. Good." And from these facts, and some other circumstances, and the inconsistency of some of his statements, the jury were warranted in discarding his testimony, and in finding that the animal was stolen by him in Ness county.

4. New trial—no ground for granting.

The remaining objection is, the conduct of the sheriff while the jury was in his charge, deliberating on their verdict. It appears that he was standing on the outside of the room occupied by the jury, the door being closed, and the jury desired the testimony of a witness, given orally on the trial, and the sheriff in response said: "Gentlemen, you cannot have any testimony admitted after you have gone into your jury-room." While it was the duty of the officer to convey the request of the jury to the judge, and obtain a direction from him, yet the officer was undoubtedly correct in the answer which he gave. This was the only communication between the officer and the jury, and when it occurred the jury-room

5. Evidence, sustains verdict.

was locked. It is manifest that the defendant suffered no prejudice by reason of this communication, and upon appeal we must disregard technical errors or defects and exceptions which do not affect the substantial rights of the parties. (Crim. Code, § 293.)

No prejudicial error having been found in the record, the judgment of the district court will be affirmed.

All the Justices concurring.